### HOBBS PATENT CO. v. ATLAS SPECIALTY MFG. CO.

(Circuit Court of Appeals, Seventh Circuit. April 10, 1917.)

No. 2440.

PATENTS ☞328—VALIDITY—PRIOR USE—COVER FOR RADIATOR.
    The Hobbs patent, No. 901,616, for an insulating cover for automobile radiator and hood, *held* void for prior public use by others.

Appeal from the District Court of the United States for the East-ern Division of the Northern District of Illinois.

Suit in equity by the Hobbs Patent Company against the Atlas Specialty Manufacturing Company. Decree for defendant, and complainant appeals. Affirmed.

George L. Wilkinson, of Chicago, Ill., for appellant.

Frank T. Brown and Arthur L. Sprinkle, both of Chicago, Ill., for appellee.

Before BAKER, MACK, and ALSCHULER, Circuit Judges.

MACK, Circuit Judge. This appeal is taken from the decree of the District Court, holding Hobbs patent, No. 901,616, granted October 20,

1908, upon an application filed February 14, 1908, void for want of patentable novelty.

The patent in suit is for a heat-insulating cover for the hood and radiator of an automobile. The cover has flaps extending across the outer front surface of the radiator. These may be fastened together when the engine is not running. They may also be flung back when the machine is in motion, to allow the heat to radiate, and to prevent the boiling of the water in the radiator.

A careful reading of the record but confirms the view, expressed at the oral argument, that the evidence clearly and convincingly establishes the defense of prior use. Covers substantially like the patented devices and made by others are shown to have been in use at least a year prior to Hobbs' reduction to practice. His earliest established date is that of the filing of the application.

A brief statement of some of the evidence will suffice. C. P. Kimball & Co., of Chicago, at one time made a radiator cover for J. M. Harris, then of Chicago. A book kept by the repair department of the Kimball Company, in which the labor cost of various items was recorded, shows, under the account of J. M. Harris, "Cover for radiator, $2.50." From the number of the account and the dates appearing in the book, it is clear that this work was done in 1905. The entry was identified by the carriage trimmer who made the cover, and who has now become the superintendent of the repair department, by the foreman who made the entry, and by the then superintendent of the repair department, who placed at the time a notation thereon. The only possible question is whether this Harris cover was merely a plain piece of material fitting over the front of the radiator and attached thereto by cotter pins, or whether it extended over the entire radiator and had an adjustable curtain in front. A price list book kept by the trimmer gives the labor cost for a cover, which is there termed "a cooler cover with roll-up curtains," as $2.50. The labor involved in making a cover with an adjustable front curtain was greater, and the cost appreciably higher, than that of a cover consisting of a plain piece of pantasote fitted over and attached to the front of the radiator. Both the trimmer and the foreman unhesitatingly testified, from the labor charge made, that the Harris cover was such a radiator cover with an adjustable front curtain, similar to one made up for the purposes of the trial and introduced as an exhibit. Nothing in their testimony or in the record tends to cast doubt on the reliability of the inferences which these witnesses, having personal knowledge of the business, drew from this cost item.

Their independent recollection, so far as they had any, is that Kimball & Co. manufactured these accessories before 1908. The carriage trimmer was almost positive that he had made a radiator cover with an adjustable front curtain in 1904. Another employé testified that the company was making covers of this type when he entered its employ in March, 1907. The testimony of all four of the witnesses is straightforward and unimpeached. They are old, respectable, and trustworthy employés of the Kimball Company, and on the record are entirely disinterested.

While search might have been instituted in New York, whither Harris had moved, for him or for the cover, yet in view of the undisputed testimony that the life of such a cover is four or five years, the failure to produce the original cover or to account for its absence does not materially weaken this defense. The destruction of Kimball's office books in a disastrous fire a few years before the hearing prevented the offering of any additional evidence that they might have furnished as to the character or selling price of the Harris cover.

The only feature of the patented cover that this Harris cover does not anticipate is that part which extends over the hood. There is some evidence that the Kimball Company was also making hood covers before 1908. But, rejecting that evidence as insufficient, and assuming that some invention over the use of lap robes is involved in Hobbs' "tailored to fit" hood cover, the Hobbs' patent is invalidated by reason of the prior use of such a cover by the Chicago Carriage & Trimming Company. The books of that company conclusively establish that such a cover for an automobile hood was made for a customer on November 13, 1907. There is other evidence in the record of a prior use, which, however, we deem it unnecessary to comment upon.

Decree affirmed.